JOHN BOYD, plaintiff in error, vs. JAMES B. LOFTON and LEWIS L. HAMMOND, defendants in error.

[1.] The vendor of a mill who gives to the purchaser only a bond to make titles upon receipt of the purchase money, retains the title in himself; and a stipulation between the parties, contained in a mortgage upon other property, to the effect that in case the notes for the purchase money are not paid at maturity, the vendor may, for further security, take charge of the mill, hold it until the money is all paid, and keep and use the toll for damages and repairs, is not a mortgage upon the mill.

[2.] The vendor having, under this stipulation, a clear legal right to re-enter, in default of prompt payment by the purchaser, will not be restrained by injunction from so doing.

In Equity. In Webster Superior Court. Motion to dissolve Injunction. Decided by Judge CLARKE. January, 1866.

Boyd vs. Lofton et al.

Upon a bill filed by the plaintiff against the defendants, Judge Clarke, on the 3d of January, 1866, granted an injunction against the latter, to restrain them from taking possession of a certain mill, situate in Webster county, or interfering with the plaintiff in the use and enjoyment of the same. Subsequently, on the coming in of the answer, the Judge dissolved the injunction; and that is the error complained of.

The facts, as condensed from the bill and answer, and from the affidavits read in support of them, were as follows:

On the 10th of September, 1864, the defendant, Lofton, sold the mill to one Ravens for four thousand dollars, taking his notes therefor, due the 1st of January, 1866, and giving him a bond for titles. The notes were secured by a mortgage on some land in Terrill county; and the mortgage deed contained a stipulation to the effect, that if Ravens failed to pay off the notes at maturity, Lofton might, for further security, take charge of the mill and hold it until all of them were paid; and that he might keep and use all the toll for damages and repairs. The mortgage was recorded on the 6th of December, 1865, in Terrill county, where the land lay, but was never recorded in Webster, where the mill was situate.

On the 2d of December, 1864, the plaintiff, as the bill alleges, without, but as the answer asserts, with notice of the stipulation in the mortgage, bought from Ravens one undivided half of the mill at the price of $3,500, and paid for it.

Early in the next year, they (Ravens and the plaintiff) commenced occupying the mill as joint owners and copartners; and continued so to occupy it down to the death of Ravens, which took place in the winter of that year. The plaintiff then occupied it alone until the 1st of January, 1866, the time when the notes given by Ravens to the defendant Lofton, became due. These notes being all unpaid, Lofton and the other defendant, Hammond, who was his son-in-law, went, on that day, to the mill, took the lock off, and put on another; claiming the right to take and hold possession by virtue of the stipulation in the mortgage deed. They

directed plaintiff's miller to stop the mill, which he did; and they shut the door and locked it. The same night, however, they left it open, upon an agreement that matters should remain *in statu quo* until the next Thursday. When Thursday came, plaintiff's miller again commenced running the mill for the plaintiff, and was still doing so at the hearing of this motion in the Court below.

The bill alleges that by force of numbers, threats, and menaces, the defendants still endeavor to prevent the plaintiff from running the mill, pretending that they have the legal possession thereof, and preventing the customers from receiving meal and flour ground there, and from delivering grain to be ground; that their constant and fraudulent attempts to get possession prevent the use of the mill; that they pretend that by virtue of the mortgage, bond for titles, and notes, they have a right to take possession, and that they continually attempt to get the miller to attorn to them and give them an opportunity to obtain possession fraudulently and secretly. It alleges, also, that the estate of Ravens is solvent; that the mortgaged land is worth $4,000.00, and is ample security for the debt; that the estate has other lands worth three or four thousand dollars; that the mill is worth $6,000.00, and the toll annually, fifteen hundred dollars. It prays, not only for an injunction to protect the plaintiff's possession, but that Lofton may be compelled, by decree, to collect his demand out of the mortgaged land, the one-half of the mill retained by Ravens, and the general estate of Ravens.

The answer denies that the defendants used, or attempted to use, any force, menaces, or threats; or that they have prevented customers from having their grain ground, or from receiving their meal and flour. It asserts, on the contrary, that they were desirous of securing to, and of bestowing upon customers proper attention. It denies that Ravens' estate is solvent, but alleges its utter insolvency. It denies that the mortgaged land is worth more than $1,000, or the mill, in its present condition, more than about $3,000. The

annual toll, it alleges, is worth about $800 or $1,000. It asserts that the defendants had a right to the possession under the contract with Ravens, and that the miller knew it, and vacated the mill that they might enter. It denies that they sought to induce him to attorn to them, or that it was necessary for them to do so.

Some other facts about the mill's needing repairs, etc., appear in the record; but they are immaterial, under the view taken of the case in this Court.

W. A. HAWKINS, for plaintiff in error.

WOOTEN, for defendant.

HARRIS, J.

The injunction in this case was improvidently granted: we are persuaded it would not have been, had all the facts been before the Judge at that time, as fully as they were presented when the motion to dissolve was made and sustained.

It was a strange proceeding on the part of complainant, in the uninterrupted possession of the mill, to seek to restrain respondents as he did. The defendants in error, by a special covenant in the mortgage which they took of Ravens on land in Terrill county, as security for the purchase money of the mill property, expressly reserved the right of peacable re-entry upon it, upon failure to pay as stipulated. Here was, then, a clear legal right which could not be gainsayed or restrained. There is no force in the position argued, that the mortgage was void as to the mill property, because it had not been recorded in Webster county, where it was situated. There was no mortgage whatever on the mill property; the title to it had never passed out of Lofton the vendor; he sold it to Ravens, simply giving his bond to make titles when all the purchase money was paid.

It would have been an absurdity, not having parted with his title, to take a mortgage on what he already held by a higher tenure.

Judgment affirmed.